In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-1492

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

KENNETH R. LENOIR,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 00-CR-44—**Rudy Lozano**, *Judge.*

ARGUED NOVEMBER 7, 2002—DECIDED FEBRUARY 4, 2003

Before BAUER, EASTERBROOK, and MANION, *Circuit Judges.*

BAUER, *Circuit Judge.* The government indicted Defendant Kenneth R. Lenoir for knowingly possessing firearms after having been convicted of a felony. Lenoir filed a motion to dismiss the charge and a motion to suppress evidence seized by the police during a warrantless entry of his home, both of which the district court denied. A jury then convicted him. Prior to sentencing, Lenoir objected to the Presentence Report's recommendation that he be sentenced as an armed career criminal under § 4B1.4(a) of the United States Sentencing Guidelines Manual. Following a hearing, the district court overruled Lenoir's objections and sentenced him to 270 months' imprisonment.

Lenoir appeals the admission of evidence seized by police during the warrantless entry of his home as well as the district court's finding that he qualified as an armed career criminal. We affirm.

## BACKGROUND

On the afternoon of January 4, 2000, Detective Sergeant Tom Branson of the Gary, Indiana, Police Department overheard a police radio dispatch about a disturbance involving an unidentified male with a gun in the St. John Homes area, a known high crime neighborhood. The disturbance took place near 2153 Carolina Street, and Branson understood that the man with the gun had left that address. Arriving on the scene shortly thereafter, Branson observed a man later identified as Lenoir walking down an alley only one-eighth of a block east of 2153 Carolina Street. Lenoir appeared to be intoxicated and seemed to be carrying something under his coat.

As Lenoir continued down the alley, Branson saw a shotgun and a rifle protruding from inside Lenoir's coat. Branson also saw an ammunition magazine for the rifle that appeared capable of holding over twenty rounds. Branson knew that Indiana law did not prohibit Lenoir from carrying the guns, but a city ordinance prohibited possession of an ammunition magazine of this capacity. In Indiana, however, police cannot make arrests for violations of city ordinances. Branson continued to monitor Lenoir and radioed the information to backup. Lenoir appeared to be trying to maintain a grip on the guns, and Branson observed Lenoir stop, put the guns down on the ground, and re-grip them.

Just as Lenoir picked up the guns again, police cars approached from the opposite end of the alley. According to Branson, Lenoir looked in the direction of the police cars and then fled into a home located at 2125 Vermont,

only a short distance away. At the time, police did not know that Lenoir lived at this address with his mother. Officer Travis Jolly yelled, "Police, Stop!" and pursued Lenoir. Jolly saw Lenoir have trouble entering the home, and so Jolly followed closely behind Lenoir without knocking or seeking permission to enter. Jolly apprehended Lenoir at the bottom of a small basement staircase just to the right of the front door. Upon being caught, Lenoir struggled with Jolly, which resulted in a cut requiring stitches above Lenoir's eye. Branson had entered the home a few seconds behind Jolly and observed Jolly bringing Lenoir up the basement staircase. Branson also saw a woman and children in the home. Branson went down the basement staircase and removed the shotgun, rifle, and Lenoir's coat, which were lying on the floor approximately fifteen feet inside the house.

The rifle was an SKS assault rifle with a magazine capacity greater than twenty rounds, although only two bullets were in the magazine; the shotgun was a Mossberg 12-gauge. When Jolly brought Lenoir outside another officer recognized Lenoir as a convicted felon and police arrested him for being a felon in possession of a firearm as well as for battering a police officer and resisting law enforcement.

Lenoir was indicted for possession of firearms by a convicted felon based on his conviction for burglary in the Superior Court of Lake County, Indiana, in May 1994. Lenoir filed a motion to suppress the evidence seized from the warrantless entry of his home and a motion to dismiss the charges. At the hearing on his motion to suppress, Lenoir testified that he went to 2153 Carolina Street to retrieve his guns so that he could store them at his mother's home; he was scheduled to enter a halfway house that day as part of his parole for the burglary conviction. Lenoir also admitted that he consumed forty ounces of beer that morning. He claimed that he

dropped his keys when he stopped and placed the guns on the ground and that he made a "slight fast walk" to his house. Lenoir denied running to his house and denied being aware that police were pursuing him. He also claimed that he entered his house, put the guns in the basement, covered them with his jacket, and proceeded back up the stairs before seeing Branson and being grabbed by Officer Jolly. Finally, Lenoir claimed that Branson directed a third officer to proceed into the basement and look for the guns.

Finding Lenoir's testimony not credible, the district court denied Lenoir's motions. Lenoir renewed the motion to suppress prior to trial, and it was again denied, leading to a one-day jury trial. At the close of the government's case, Lenoir renewed the motion for a third time, and the court denied it again. Lenoir presented no evidence at trial and was convicted by the jury.

Prior to sentencing, Lenoir filed an objection to the Presentence Report's recommendation that he be sentenced as an armed career criminal. Lenoir had been convicted on separate occasions of Commission of a Felony While Armed in Indiana in 1975, Burglary in Indiana in 1980 and 1994, Breaking and Entering at Night with Intent to Commit a Felony in Massachusetts in 1990, and of possession of cocaine with intent to sell in Florida. The first sentencing hearing was continued in order to give Lenoir, acting *pro se* at this point, time to file specific objections to the Presentence Report, to which he filed several. When the sentencing hearing was finally held, the district court overruled Lenoir's objections and held that he qualified as an armed career criminal under § 4B1.4(a) of the United States Sentencing Guidelines Manual as a result of his 1980, 1990, and 1994 convictions. The district court sentenced him to 270 months' imprisonment. This appeal ensued.

## ANALYSIS

### A.  *The Warrantless Entry and Seizure of Evidence*

When examining the district court's denial of a motion to suppress, we undertake a *de novo* review of questions of law, including whether reasonable suspicion exists to justify a *Terry* stop, and we examine findings of fact for clear error. *United States v. Kincaid*, 212 F.3d 1025, 1028 (7th Cir. 2000); *United States v. Scheets*, 188 F.3d 829, 836 (7th Cir. 1999).

As an initial matter, Lenoir asserts that the district court should not have imputed what Branson knew of Lenoir's behavior to Officer Jolly at the moment Jolly entered Lenoir's home because Jolly did not testify at the suppression hearing. When law enforcement officers are in communication regarding a suspect, however, the knowledge of one officer can be imputed to the other officers under the collective knowledge doctrine. *United States v. Sawyer*, 224 F.3d 675, 680 (7th Cir. 2000). Branson testified that he radioed information about Lenoir to fellow officers, including Jolly, as he watched Lenoir in the alley. Furthermore, Lenoir twice renewed his motion to suppress after the district court denied it at the suppression hearing. The second renewal came after the close of the government's case, during which the court heard Jolly's testimony. The district court, therefore, was free to consider either Branson's or Jolly's testimony and knowledge of the situation when deciding whether Jolly's entrance into Lenoir's home was constitutional.

Lenoir's next argument is that police lacked probable cause to justify the warrantless entry of his home, the seizure of the weapons, and the arrest. This raises two issues; first, we must decide whether police had constitutional authority to detain Lenoir; and second, whether the circumstances of the situation and Lenoir's behavior justified the warrantless entry of his home, the seizure

of the guns, and the subsequent arrest of Lenoir for being a probable felon in possession of firearms.

Lenoir argues that police did not have the authority to stop him because they lacked probable cause to believe that he had committed, or was about to commit, a crime. He concedes, however, that police do not always need probable cause to detain an individual when reasonable suspicion exists. Reasonable suspicion amounts to an "'objective manifestation that the person stopped is, or is about to be, engaged in criminal activity.'" *United States v. Swift*, 220 F.3d 502, 506 (7th Cir. 2000). Put another way, it is something less than probable cause but more than a hunch. *Id.*

When determining whether reasonable suspicion exists, we examine the totality of the circumstances known to the police at the time of the stop, including the experience of the officers and the behavior and characteristics of the suspect. *United States v. Quinn*, 83 F.3d 917, 921 (7th Cir. 1996). Police can sometimes consider otherwise innocent behavior in determining whether reasonable suspicion exists to detain a person. *See Terry v. Ohio*, 392 U.S. 1, 22-23 (1968). Specifically, police observation of an individual, fitting a police dispatch description of a person involved in a disturbance, near in time and geographic location to the disturbance establishes a reasonable suspicion that the individual is the subject of the dispatch. *See United States v. Juvenile TK*, 134 F.3d 899, 904 (8th Cir. 1998) (affirming reasonable suspicion determination when police spotted defendant's car, which matched police dispatch description, no more than two blocks away from the scene of the robbery and within five minutes of a second police dispatch concerning the robbery).

Additionally, a person's flight upon seeing the police approach in a high crime area establishes reasonable suspicion to justify a *Terry* stop. *Illinois v. Wardlow*, 528

U.S. 119, 124 (2000); *Quinn*, 83 F.3d at 921. A suspect's failure to halt upon police command to do so, *Quinn*, 83 F.3d at 921, as well as the suspect's apparent public intoxication further support a finding of reasonable suspicion, *see* IND. CODE § 7.1-5-1-3 (2002) (making public intoxication a Class B misdemeanor); *see also Gallegos v. City of Colorado Springs*, 114 F.3d 1024, 1029 (10th Cir. 1997) (supporting the existence of reasonable suspicion on the basis of police finding the defendant intoxicated and near the location of a police dispatch concerning a drunk man arguing with a woman in public); *United States v. Rideau*, 969 F.2d 1572, 1575 (5th Cir. 1992) (relying in part on the fact that Texas law makes public intoxication a criminal offense to support a *Terry* stop of the defendant); *United States v. Simmons*, 918 F.2d 476, 481 (5th Cir. 1990) (relying in part on suspect's intoxication to justify reasonable suspicion determination).

Here, Branson observed Lenoir walking down an alley only one-eighth of a block from 2153 Carolina Street shortly after he responded to a police radio dispatch about a disturbance at that address involving an unidentified male with a gun. Lenoir fit the physical description broadcast to police, and as Branson watched Lenoir, he noticed that Lenoir was carrying two high-powered weapons. Carrying these weapons may not be a crime in Indiana, but the police can still factor this otherwise innocent behavior into the equation.

Branson further noticed that Lenoir appeared drunk, as his gait was irregular walking down the alley. When Lenoir saw police approach from the opposite end of the alley, he fled with the two weapons into a nearby home. The police did not know that it was Lenoir's home at the time, and Officer Jolly saw Lenoir have trouble entering the door. Jolly identified himself and called for Lenoir to halt, but Lenoir ignored the directive. Finally, it is well-known that the St. John Homes neighborhood is a high

crime area. Accordingly, we find that these factors all combined to create more than enough reasonable suspicion for the police to initiate a *Terry* stop of Lenoir.

We turn now to whether the police had the constitutional authority to enter Lenoir's home and seize both him and the guns following his flight into the residence. Generally, a warrantless entry of a person's home and any subsequent seizures are invalid unless supported by exigent circumstances. *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1243-44 (7th Cir. 1994). The Supreme Court and this Court have previously stated that warrantless searches will be allowed when police have a reasonable belief that exigent circumstances require immediate action and there is no time to secure a warrant. *Michigan v. Tyler*, 436 U.S. 499, 509 (1993); *United States v. Webb*, 83 F.3d 913, 916 (7th Cir. 1996).

The Supreme Court has characterized the following situations as exigent circumstances: hot pursuit of a fleeing felon; to prevent the imminent destruction of evidence; to prevent a suspect's escape; or to address the risk of danger to the police or to other persons inside or outside the dwelling. *Minnesota v. Olson*, 495 U.S. 91, 100 (1990). We are concerned primarily with whether the police were justified in initiating a warrantless entry of Lenoir's home to address the risk of danger to themselves or any occupants of the home when Lenoir fled from police armed with two high-powered weapons.

We have stated before that police need not wait for screams from within in order to fear for the safety of occupants or themselves. *United States v. Brown*, 64 F.3d 1083, 1086 (7th Cir. 1995). Lenoir's situation is similar to that in *United States v. Brown*, where the defendant gave no indication that the residence in question was his own. *Id.* This Court justified the warrantless entry of the home in *Brown* because the police reasonably feared

for the safety of someone inside. *Id.* The defendant possessed keys to the apartment, yet claimed that he lived elsewhere. *Id.* As *Brown* recognized, had the officers known that the defendant actually lived there, they would have needed a warrant to enter. *Id.*

Similarly, police were not aware that Lenoir was entering his own home. They saw Lenoir take flight upon seeing them approach and have difficulty entering the home while armed with a shotgun and an assault rifle. We find that the police reasonably feared for the safety of occupants in the home and for their own safety, especially given Lenoir's intoxicated state. By delaying entry into the home, in order to find out if Lenoir lived there, police would have risked giving Lenoir the opportunity to harm police or whomever was inside. *See United States v. Hardy*, 52 F.3d 147, 149-50 (7th Cir. 1995). In fact, Branson testified that he saw a woman and children in the home when he entered. We will not force police to risk the safety of others or themselves when the circumstances and a suspect's behavior create a reasonable belief that they or someone inside may be in danger.[1] We find that Lenoir's actions aroused a reasonable suspicion in police, justifying a *Terry* stop, and further created exigent circumstances to justify the warrantless entry.

The police were also not required to knock and announce their presence because they knew Lenoir was heavily armed and because Lenoir already knew he was being pursued. *See United States v. Stowe*, 100 F.3d 494, 499

---

[1] We also note that Lenoir struggled with Officer Jolly upon being apprehended, which resulted in a cut above Lenoir's eye that required stitches. While Lenoir's behavior after being detained does not directly support the determination that exigent circumstances justified a warrantless entry of the home, it does corroborate that determination after the fact. Clearly, Lenoir was willing to put up some fight before being apprehended.

(7th Cir. 1996) (relying on police knowledge that defendant was armed and dangerous to justify no-knock execution of warrant); *United States v. Buckley*, 4 F.3d 552, 558 (7th Cir. 1993) (excusing police from "any requirement of arousing armed defendants, or [their pit bull]"). Once Officer Jolly entered Lenoir's home, the subsequent seizures of Lenoir and the guns by police were reasonable. Officers neutralized the possible threat Lenoir posed and removed only the guns and jacket Lenoir had been wearing. *See Brown*, 64 F.3d at 1086-87 (noting that police entry was limited to the circumstances of the situation). No other search or seizure occurred, and what did occur extended only fifteen feet into the nearby basement of the home where Lenoir had fled with the guns. The district court properly denied Lenoir's motion to suppress the evidence seized from his home because police had reasonable suspicion to detain Lenoir and exigent circumstances necessitated the warrantless entry of his home.

### B.  Lenoir's Armed Career Criminal Status

Lenoir next argues that the district court improperly sentenced him as an armed career criminal under § 4B1.4(a) of the United States Sentencing Guidelines Manual. Under § 4B1.4(a), anyone subject to a sentence enhancement under 18 U.S.C. § 924(e) qualifies as an armed career criminal. U.S. SENTENCING GUIDELINES MANUAL § 4B1.4(a) (2002). Section 924(e) provides for a sentence enhancement for persons who violate § 922(g), as Lenoir did, and have had three previous convictions for a "violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1) (2002).

Lenoir concedes that two Indiana convictions for Burglary in 1980 and 1994 both qualify as predicate felonies

under § 924(e). He argues, however, that a 1990 Massachusetts conviction for Breaking and Entering at Night with Intent to Commit a Felony, a 1975 Indiana conviction for Commission of a Felony While Armed, and a Florida conviction for possession of cocaine with intent to sell cannot serve as the final predicate felony under § 924(e). On appeal, the government concedes that the 1990 Massachusetts conviction cannot stand as a predicate felony for the § 924(e) enhancement but asserts that either of the other two convictions can.

Lenoir did not specifically object at any point before this appeal to the inclusion of the 1975 conviction and raised nothing more than a general objection to his status as an armed career criminal. He argues that his status as a *pro se* litigant and his general objection to the sentence enhancement subject him to a lower burden, thereby excusing his failure to make a specific objection to the inclusion of his 1975 conviction. We are not inclined to agree and note that the sentencing hearing was continued to give Lenoir time to file specific objections to the Presentence Report. Of the ones he filed, none addressed this issue. *See United States v. McClellan*, 165 F.3d 535, 551 (7th Cir. 1999) ("a party must make a proper, timely objection at trial or sentencing on the *same specific ground* he or she is appealing") (emphasis in original). Accordingly, we will examine whether the district court committed plain error in considering Lenoir's 1975 Indiana conviction for Commission of a Felony While Armed as a predicate felony for the § 924(e) enhancement. *United States v. Hardamon*, 188 F.3d 843, 848-49 (7th Cir. 1999).

Under § 924(e)(2)(B), a "violent felony" includes any felony conviction that: "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves

conduct that presents a serious potential risk of physical injury to another." § 924(e)(2)(B). At the time of his 1975 conviction, Indiana law established a separate felony for anyone who committed or attempted to commit any felony while armed with a dangerous weapon. Ind. Code § 35-12-1-1 (1975), *repealed by* Acts 1976, P.L. 148, Sec. 24.

Because none of the elements of section 35-12-1-1 included the use, attempted or otherwise, of physical force against another, and because Lenoir's conviction was not for burglary, arson, extortion, or involve the use of explosives, we are concerned only with the "otherwise" prong of § 924(e)(2)(B). In *United States v. Fife*, we stated that the *possibility* of violent confrontation governs whether an offense falls under the "otherwise" prong. *United States v. Fife*, 81 F.3d 62, 64 (7th Cir. 1996). We look, therefore, to the underlying felony the defendant committed while armed to determine if it is the sort of crime that presents a serious potential risk of injury to another. *Id.*

While we generally examine the charging document to discern the nature of the underlying felony, Lenoir's Presentence Report contained only proof that he had been convicted of Commission of a Felony While Armed; it did not disclose the nature of the underlying felony. The government presents the Indiana Supreme Court's opinion in *Lenoir v. State*, 368 N.E.2d 1356, 1357 (1977), which reveals that the underlying felony was armed robbery. Clearly, armed robbery always presents the potential for serious injury to another person. Lenoir's only argument is that the lack of information in the Presentence Report prevents us from considering the nature of the underlying felony as revealed by the Indiana Supreme Court's opinion. Had Lenoir specifically objected to the inclusion of this conviction, however, the district court could have taken notice of the Indiana Supreme Court's opinion. We find that this information is suffi-

cient to qualify Lenoir's 1975 conviction as the final, predicate "violent felony" under § 924(e).

The government also points, albeit for the first time, to Lenoir's conviction in Florida for possession of cocaine with intent to sell, which qualifies as a "serious drug offense" under § 924(e)(2)(A)(ii). As it is relevant here, a "serious drug offense" is defined as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance." § 924(e)(2)(A)(ii). Even were we to consider it plain error for the district court to consider the 1975 conviction, Lenoir's conviction in Florida would still qualify him for the § 924(e) enhancement. It was, however, not plain error but appropriate for the district court to apply the § 924(e) sentence enhancement and sentence Lenoir as an armed career criminal under § 4B1.4(a) of the United States Sentencing Guidelines Manual.

Accordingly, the decision of the district court is AFFIRMED.

A true Copy:

       Teste:

                    _____
                    *Clerk of the United States Court of*
                        *Appeals for the Seventh Circuit*