**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 13, 2005[*]
Decided December 27, 2005

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 05-1797

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 04 CR 40035 |
| JERMAINE JACKSON, *Defendant-Appellant*. | Michael M. Mihm, *Judge*. |

**O R D E R**

Police in Rock Island, Illinois, stopped Jermaine Jackson on the street moments after two men reported being victims of an attempted armed robbery. Jackson had a handgun and was arrested. He was charged by federal authorities with possession of a firearm by a felon, 18 U.S.C. § 922(g)(1), and moved to suppress the gun on the theory that the police lacked reasonable suspicion when they detained him. The district court denied the motion after holding an evidentiary hearing, and Jackson then entered a conditional guilty plea reserving the right to

---

[*] This court previously granted appellant Jackson's unopposed motion to waive oral argument. Thus, the appeal is submitted on the briefs and record. *See* Fed. R. App. P. 34(f); Cir. R. 34(e).

challenge the suppression ruling on appeal. We uphold that decision and affirm Jackson's conviction.

Two patrol officers were the only witnesses at the hearing on Jackson's motion to suppress. Officer Joseph Sisler testified that he and his partner, Officer Hufford, were on patrol at approximately 1:30 a.m., on Sunday, March 28, 2004, when a motorist, Brian Church, flagged them down and reported that three black men dressed in dark clothing had just tried to rob him and his passenger about a block away. The tallest of the three, Church said, had pulled a handgun and threatened to kill him. According to Sisler, Church stated that the three men started walking south on 14½ Street toward 9th Avenue after the confrontation. Church's passenger, Sisler said, gave the same account. Sisler explained that, while he was interviewing the victims, Officer Hufford alerted other patrol units by radio. That broadcast, Sisler said, generated a quick response from Officer Richard Landi, who radioed back that he had spotted suspects matching the description and needed assistance in executing a high-risk stop at 14½ Street and 12th Avenue, about three blocks away from the site of the reported confrontation. Sisler testified that he and Hufford arrived in their squad car at Landi's location within five minutes of encountering Church and his passenger. As they arrived, he said, Landi shined a floodlight on three black men, and then all three officers exited their squad cars with their guns drawn and ordered the men to stop.

Officer Landi, the government's other witness, corroborated Officer Sisler's account. Landi testified that he heard Officer Hufford's report of an apparent robbery attempt by three black men in dark clothing, one of them taller than the other two and armed with a gun, who were last seen walking southbound on 14½ Street near 9th Avenue. Landi drove to that location, and then followed 14½ Street south until he observed the three black men standing at 14½ Street and 12th Avenue. Landi had seen no one else on the street, and when the three men saw him, they turned and started walking southbound on 14½ Street. By then, Landi continued, Sisler and Hufford arrived, and the three officers ordered the suspects to stop at gunpoint. Landi pointed his gun at Jackson, the tallest of the three men. Jackson initially refused to show his hands and instead turned so his right side was obscured, but eventually he laid down as ordered and placed his hands behind his back. Landi testified that he then handcuffed Jackson and asked if he had a gun. According to Landi, Jackson "gestured" toward the .22 caliber revolver in a back pocket and replied, "It's there." Jackson and the other two men were arrested moments later when Church and his passenger arrived and identified Jackson as the man who threatened them with a hand gun.

In denying Jackson's motion to suppress, the district court held that the police had conducted a valid investigatory stop under *Terry v. Ohio*, 392 U.S. 1 (1968). On appeal Jackson takes exception with that conclusion and argues that

the description of the attackers, at least as it was given by the victims and conveyed in Officer Hufford's report, "was so vague and generalized as to apply to any black male in the city of Rock Island who happened to be on the public streets." We review a district court's determination of reasonable suspicion de novo. *Ornelas v. United States*, 517 U.S. 690, 697 (1996); *United States v. Ganser*, 315 F.3d 839, 843 (7th Cir. 2003).

A police officer must possess specific and articulable facts giving rise to a "reasonable suspicion" that a person has or is about to engage in criminal activity before detaining that individual to investigate. *See United States v. Lenoir*, 318 F.3d 725, 729 (7th Cir. 2003); *United States v. Scheets*, 188 F.3d 829, 837 (7th Cir. 1999). The officers involved in the stop need not personally be aware of all of the facts justifying the stop; it is sufficient for the officers to share their collective knowledge of the events to develop a reasonable suspicion. *See United States v. Hensley*, 469 U.S. 221, 232-33 (1985); *United States v. Nafzger*, 974 F.2d 906, 910 (7th Cir. 1992). In assessing whether the officers' suspicion was reasonable, we examine the totality of the circumstances from the officers' perspective at the time of the stop. *United States v. Hendricks*, 319 F.3d 993, 1001 (7th Cir. 2003). As such, we have held that an individual's reaction to the arrival of the police, the similarity of the individual to a police-bulletin description of a person involved in a crime, and temporal and geographic proximity of the individual to the offense are all factors that can give rise to a reasonable suspicion. *See Lenoir*, 318 F.3d at 729.

At the outset, we reject Jackson's argument that the radio broadcast was so general as to encompass any black male then walking the city streets. Officer Hufford radioed that the suspects were (1) three (2) black (3) men (4) wearing dark clothing and last seen (5) walking together (6) south on 14½ Street near 9th Avenue, and that one of the men was (7) taller than the other two men. This broadcast included sufficient details to satisfy the constitutional standard. *See United States v. Broomfield*, 417 F.3d 654, 654-55 (7th Cir. 2005) (stating that police were justified in stopping defendant based on dispatch stating that a store in the vicinity had just recently been held up by "a black man wearing dark clothing and brandishing a silver-colored pistol" who fled on foot).

Jackson's argument, though, misses the point. The Fourth Amendment is not implicated until a person is actually stopped by police, *see Terry v. Ohio*, 392 U.S. 1, 16-17 (1991); *United States v. Askew*, 403 F.3d 496, 506-07 (7th Cir. 2005), and we examine the totality of the circumstances from the officers' collective perspectives *at the time of the stop* to determine the presence of reasonable suspicion, *Hendricks*, 319 F.3d at 1001; *Nafzger*, 974 F.2d at 910. Therefore, the relevant question is whether the three officers, at the moment they exited their cars and ordered Jackson and his companions to stop, had reasonable suspicion based upon all of the events that occurred up until that specific moment. When viewing

the events in this light, it is apparent that the information broadcast by Officer Hufford is not the sum of what gave reasonable suspicion to believe that Jackson and his companions were the men that attacked Church and his passenger. By the time Jackson was stopped, Landi had located him and the other two men approximately five blocks from the crime scene and within minutes after Officers Sisler and Hufford encountered Church and his passenger. Landi saw no one else on the street at that time of the night other than Jackson and his companions, and when they observed him, they walked away. Viewing these facts in their totality, *see Hendricks*, 319 F.3d at 1001, the officers had a reasonable suspicion that Jackson and his companions were the men who attacked Church and his passenger. *See Broomfield*, 417 F.3d at 654-55; *Lenoir*, 318 F.3d at 729.

AFFIRMED.