**UNPUBLISHED ORDER**

Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 18, 2006[*]
Decided December 8, 2006

**Before**

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 06-1780

| | |
|---|---|
| EMMA SARGENT, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Central District of Illinois |
| *v.* | No. 04-CV-1183 |
| RUSSELL IDLE, *Defendant-Appellee.* | Joe Billy McDade, *Judge.* |

**O R D E R**

On the evening of July 1, 2002, Galesburg, Illinois police officer Russell Idle burst into Emma Sargent's home chasing after her son whom Idle had just seen selling drugs. Inside he scuffled with Sargent, and arrested her for obstructing justice and resisting arrest. After the charges against her were dropped, Sargent sued the City of Galesburg and Officer Idle under 42 U.S.C. § 1983 alleging: (1) unlawful entry into her home, (2) false arrest, (3) the use of excessive force, and

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

(4) child endangerment.  The district court granted summary judgment for the City
of Galesburg, determining that under § 1983 the city was not vicariously liable for
Idle's conduct, and granted partial summary judgment for Idle on the child
endangerment claim, finding that it was time-barred.  The remaining three claims
proceeded to a jury trial where the jury entered a verdict in favor of Idle.  Sargent
appeals the jury's verdict and we affirm.

The following facts were elicited at trial.  While on uniformed bike patrol,
Galesburg police officers Idle and Olinger witnessed Sargent's son Robert Sargent, a
convicted felon then known to Idle, selling drugs in a high crime neighborhood in
Galesburg, Illinois.  Robert ran from the two officers and they both followed on foot,
but Olinger lost sight of Idle after Idle chased Robert around a corner.  Idle testified
that he saw Robert run through Sargent's ajar backdoor, and so he ran into the
home through the same backdoor, drew his gun, and spun around in several circles
in the living room.  Hearing her grandchildren screaming, Sargent, who was 58 at
the time and in a surgical boot, ran from the front porch into the foyer.  Her
son-in-law Mearon Diggins, a convicted felon also known to Idle, and her son Robert
Jackson, another convicted felon, came in behind her.[1]  Idle ran into the foyer as
well where Sargent, Diggins, and Jackson began screaming at him and Sargent
called him a "fat fart."  A scuffle ensued, the details of which the parties sharply
disputed at trial, and Idle radioed for back-up.  Because he was not able to relay his
precise location, he gave a general location and pointed his flashlight out the
window in order to identify the house.  Officer Pieper, also a Galesburg police
officer, arrived shortly thereafter.  Sargent, with Idle, Diggins, and Jackson
following behind her, went outside to the front yard and yelled to Pieper that she
had called 911.  Two more officers arrived, and another scuffle ensued—this time in
the front yard— during which Idle sprayed Sargent with pepper spray.  All four
officers eventually arrested Sargent, Diggins, and Jackson for obstructing justice.
Both floors of the home were then searched, but Robert was not found in the house.

The jury entered a verdict in favor of Officer Idle, finding that: (1) exigent
circumstances justified his entry into Sargent's home, (2) Idle had probable cause to
arrest Sargent, and (3) the amount of force Idle used in effectuating the arrest was
reasonable.

On appeal Sargent first argues that the jury's verdict should be set aside and
the case remanded for a new trial because the verdict was against the manifest
weight of the evidence.  Sargent faces a difficult task because we review the facts in
the light most favorable to the jury's verdict, and will not overturn a jury's verdict if

---

[1]Sargent has two sons named Robert: Robert Sargent (whom Idle had been chasing)
and Robert Jackson (who had been on the front porch with Sargent).  We will refer to
Robert Sargent as "Robert" and Robert Jackson as "Jackson."

a reasonable basis exists in the record to support it. *Cefalu v. Village of Elk Grove*, 211 F.3d 416, 424 (7th Cir. 2000). Furthermore, we will not second-guess credibility determinations, *see Harvey v. Office of Banks and Real Estate*, 377 F.3d 698, 712 (7th Cir. 2004), upon which most of this case turns.

We first take up Sargent's unreasonable entry claim. Since Robert was never found in the house, Sargent argues that the evidence does not support the jury's finding that exigent circumstances justified Idle's entry into her home.

It is well-settled that a warrantless search of a person's home is presumptively unreasonable under the Fourth Amendment, absent exigent circumstances or other clearly delineated exceptions. *United States v. Lenoir*, 318 F.3d 725, 730 (7th Cir. 2003). For "exigent circumstances" to be present, the police must reasonably believe that the situation requires immediate action thereby leaving no time to secure a warrant. *Id.* Hot pursuit of a fleeing felon, the need to prevent the imminent destruction of evidence, and the need to address the risk of danger to occupants of a home all present exigent circumstances. *Minnesota v. Olsen*, 495 U.S. 91, 100 (1990); *United States v. Jenkins*, 329 F.3d 579, 581 (7th Cir. 2003). To determine whether these circumstances were present, we must "analyze the situation from the perspective of the officer at the scene." *Leaf v. Shelnutt*, 400 F.3d 1070, 1081 (7th Cir. 2005).

Here there existed a reasonable basis for the jury's finding that exigent circumstances justified Idle's entry into Sargent's home. Idle testified that he followed Robert through the backdoor—not knowing whose house he was entering—for three reasons: (1) he needed to apprehend Robert, (2) he needed to preserve any evidence that Robert might have on his person, and (3) he needed to protect whomever might be inside from a known felon, with this reason "being well above the others." Thus, Idle's testimony established that well-recognized exigent circumstances were present. *See, e.g., Lenoir*, 318 F.3d at 730 (holding that hot pursuit of a fleeing suspect justified a warrantless entry into the suspect's home to protect inhabitants as long as the police did not know the home belonged to the suspect). Although two of Sargent's grandsons, who had been playing basketball next to the backdoor, testified that the only person who ran through the backdoor was Idle, the jury apparently found Idle's testimony credible enough to accept his version of events. And we decline to second-guess the jury's credibility assessment. *See Harvey,* 377 F.3d at 712.

We turn next to Sargent's false arrest claim. Sargent argues that the evidence established that she was merely trying to protect her grandchildren from an intruder whom she did not realize was a police officer. She thus contends that no reasonable basis existed for the jury's finding that Idle had probable cause to arrest her.

"It is well settled that the actual existence of probable cause to arrest precludes a § 1983 suit for false arrest." *Morfin v. City of East Chicago*, 349 F.3d 989, 997 (7th Cir. 2003). Probable cause exists if, at the time of the arrest, "the facts and circumstances within the arresting officer's knowledge and of which she has reasonably trustworthy information would warrant a prudent person in believing that the suspect had committed or was committing an offense." *Anderer v. Jones*, 385 F.3d 1043, 1049 (7th Cir. 2004). And although probable cause requires "more than a bare suspicion that the suspect has committed a crime," it "need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false." *Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000). In evaluating whether an officer reasonably found probable cause, we "must consider the facts as they would have reasonably appeared to the arresting officer seeing what he saw, hearing what he heard at the time of the incident." *Driebel v. City of Milwaukee*, 298 F.3d 622, 643 (7th Cir. 2002).

Here there existed a reasonable basis for the jury's finding that Idle had probable cause to arrest Sargent. The jury was shown the bike patrol uniform that Idle had been wearing, and Idle testified that he identified himself as "Galesburg police" several times. Idle testified that nonetheless, Sargent, Diggins, and Jackson all began screaming at him when he told them that he was looking for Robert. He further testified that when he moved to go upstairs, Sargent pushed him backwards with her hands and one of the men grabbed his arm from behind. Idle testified that at this point he felt physically threatened and told Sargent she was under arrest. From this testimony, the jury could reasonably find that Idle had probable cause to arrest Sargent for interfering with his pursuit of Robert. *See Driebel*, 298 F.3d at 643 (emphasizing that it is the reasonableness of the officer's perceptions at the time of arrest that matter when determining if there was probable cause to arrest). Although Sargent disputed much of Idle's testimony, she presented nothing to conclusively undermine it, and we simply will not reweigh the evidence and disturb the jury's verdict. *See Jackson v. Bunge Corp.,* 40 F.3d 239, 244 (7th Cir. 1994).

Next we consider Sargent's excessive force claim. Sargent argues that the evidence established that she did not physically resist arrest. She thus contends that no reasonable basis existed for the jury's finding that it was reasonable to spray her— an injured 58 year old woman—with pepper spray.

The Supreme Court has made it clear that "all claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness standard.'" *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in original); *Abdullahi v. City of Madison*, 423 F.3d 763, 768 (7th Cir.

2005).  Whether the force used was reasonable depends on the particulars of a given case, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 395.  All of these factors "must be judged from the perspective a of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and "must embody allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving . . . ." *Id.* at 396.

Here the jury had a reasonable basis for concluding that Idle did not use excessive force in arresting Sargent.  Idle testified that when he sprayed Sargent with pepper spray he was trying to restore order to what he viewed as a dangerous situation.  Idle and two other officers who were on the scene testified that the front yard had turned into a melee with Sargent screaming, flailing, and trying to wriggle free from Pieper as he attempted to handcuff her, and Diggins wrestling with two officers on the ground.  Although Sargent and Diggins denied physically resisting arrest, the jury apparently found the officers' testimony credible enough to believe.  And once the jury chose to believe their testimony, the jury was required to evaluate the situation from the point of view of a police officer in the dangerous environment that the officers described.  *See Graham*, 490 U.S. at 395.  Thus, the jury could reasonably find that spraying Sargent with pepper spray constituted an appropriate amount of force to secure her arrest.  *See Johnson v. Larabida Children's Hosp.*, 372 F.3d 894, 898 (7th Cir. 2004) (concluding that the use of a higher degree of physical force than ordinarily necessary was reasonable to maintain control where the suspect had interfered with the execution of the officer's duties and "created dismay").

Sargent finally argues that we should remand for a new trial because she was denied the right to an impartial jury.  She asserts that she did not receive a jury of her peers because none of the jurors were black, and further contends that several "were friends or family with the police force."  But Sargent made no objections to the jury selection process at trial, and thereby forfeited her right to raise these arguments on appeal.  We thus review for plain error only, *United States v. Lott*, 442 F.3d 981, 984 (7th Cir. 2006), and we see nothing whatsoever in the record that calls into question the impartiality of the jury.  In fact, the Supreme Court has made it clear that the right to an impartial jury does not carry with it the right to a jury of a particular racial composition.  *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 630 (1991).

Accordingly, the judgment is AFFIRMED.