In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-4098

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CHARLES LAWSHEA,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 05-20001—**Michael P. McCuskey**, *Chief Judge.*

ARGUED FEBRUARY 24, 2006—DECIDED AUGUST 24, 2006

Before BAUER, POSNER, and WILLIAMS, *Circuit Judges.*

BAUER, *Circuit Judge.* Lawshea was charged with be-
ing felon in possession of a firearm. He filed a motion to
suppress the firearm, which was denied, and then entered
a conditional guilty plea. The denial of his motion to
suppress is the subject of this appeal.

At the motion to suppress hearing, Danville Police Officer
Terry McCord testified that at 11:45 p.m. on October 24,
2004, he was on patrol in his marked squad car in the
Danville Housing Authority's Fair Oaks housing complex
with his police dog. His sergeant had requested that he
patrol the area because several fights had taken place there
recently, including one that involved a stabbing. As Officer

McCord drove through Fair Oaks, he saw two men standing very close to each other in a lit courtyard. In his estimation, they were standing closer than he believed two persons would normally stand. When Officer McCord turned toward the courtyard in his squad car, he saw the two men look directly at him. One of the men turned and ran into a nearby apartment. The other man, later identified as defendant Charles Lawshea, turned around and began walking away from Officer McCord's squad car.

When Officer McCord drove his car into the courtyard, Lawshea looked back and began running. Lawshea sprinted around an apartment building three times and McCord followed him in the squad car. After the third lap, Officer McCord stopped his car and twice warned Lawshea that if he did not stop, Officer McCord would release his police dog. Lawshea kept running and Officer McCord released and commanded his dog to apprehend the defendant. The police dog quickly caught up with Lawshea and knocked him to the ground while biting his back. As the police dog continued to bite, Lawshea fought with the dog and attempted to push the dog off. Officer McCord ran up and told Lawshea to stop fighting with the dog and to put his hands out to his sides. Once Lawshea stopped struggling, Officer McCord ordered the police dog to release Lawshea. At that point, Lawshea, who was lying flat on his stomach, began moving again by reaching underneath his stomach. McCord told Lawshea three times to keep his hands out in front or he would release the police dog again. When Lawshea kept reaching underneath his stomach, Officer McCord again instructed the police dog to apprehend the defendant. After a few seconds of struggling, Lawshea placed his hands away from his body. The dog then released him and Officer McCord restrained Lawshea for about 20 to 30 seconds until backup officers arrived.

Once the backup officers arrived, Officer McCord and the police dog stepped away as the other officers handcuffed

Lawshea with his hands behind his back and rolled him over on his side. Officer McCord then saw a small caliber handgun, later found to be loaded with a bullet in the chamber, on the ground where Lawshea's stomach had been and in the exact area where Lawshea had been reaching. After seizing the handgun, the officers determined that Lawshea was a convicted felon; he was then placed under arrest and taken to Provena United Samaritans Medical Center, where he received a tetanus shot and was treated for bites to his back and shoulder.

At the Medical Center, Officer McCord met with Lawshea and read him his *Miranda* rights. Lawshea agreed to waive his rights and speak with McCord. He admitted to McCord that he ran away from the squad car because he had a handgun in his sweatshirt pocket. Lawshea said that he had just bought the gun from a 15-year-old in Fair Oaks because his life had been threatened earlier in the day in connection with the fights that had been taking place in the complex.

On February 24, 2005, Lawshea filed a motion to suppress the seizure of the gun, claiming that his actions were not the type of unprovoked flight that would create a reasonable suspicion for a stop. The district court held an evidentiary hearing on June 9, 2005. Officer McCord testified for the United States regarding Lawshea's flight on October 24, 2004. Lawshea did not present testimony in support of the factual account argued in his motion to suppress. Lawshea argued that when the officer released his police dog to apprehend Lawshea the *Terry* stop was transformed into a custodial arrest that lacked probable cause. Lacking probable cause to arrest the defendant, Lawshea urged, the evidence should to be suppressed.

The district court denied Lawshea's motion to suppress in its entirety. Lawshea then entered a conditional guilty plea pursuant to an agreement with the government. The

district court sentenced Lawshea to 27 months' imprisonment. This timely appeal followed.

**Analysis**

Lawshea first argues that the officer did not have reasonable suspicion to conduct a *Terry* stop. Next, he contends that the use of a police dog to conduct the *Terry* stop rendered it an unconstitutional arrest. We review a district court's legal conclusions on a motion to suppress *de novo*. *United States v. Baskin*, 401 F.3d 788, 791 (7th Cir. 2005). Questions of fact are reviewed for clear error. *United States v. Breland*, 356 F.3d 787, 791 (7th Cir. 2004).

We have consistently held that officers may conduct an investigatory stop of a person when they have a reasonable, articulable suspicion that criminal activity is afoot. *Breland*, 356 F.3d at 791 n.1 (2004) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). While "reasonable suspicion" is a hard term to define precisely, the Supreme Court has held that it is a commonsense, nontechnical concept that deals with the factual and practical considerations of "everyday life on which reasonable and prudent [people], not legal technicians, act." *Ornelas v. United States*, 517 U.S. 690, 695 (1996) (citations omitted). But, even though "'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). In other words, reasonable suspicion is less than probable cause but more than a hunch. *United States v. Lenoir*, 318 F.3d 725, 729 (7th Cir. 2003). When determining whether an officer had reasonable suspicion, courts examine the totality of the circumstances known to the officer at the time of the stop, including the experience of the officer and the behavior and characteristics of the

suspect. *Id.* Further, we recognize that certain behavior in isolation may have an innocent explanation yet that same behavior may give rise to reasonable suspicion when viewed in the context of other factors at play. *Baskin*, 401 F.3d at 793.

Here, Lawshea's flight from Officer McCord in a high-crime area just before midnight gave the officer a reasonable suspicion to stop Lawshea. Recent fights, including a stabbing, triggered Officer McCord's patrol that evening. When he saw two men standing suspiciously close to each other, he approached them in his patrol car. Once Lawshea began sprinting from Officer McCord, the officer had reasonable suspicion to stop Lawshea and investigate further. Flight from a law enforcement officer gives that officer reasonable suspicion to pursue a suspect and conduct a *Terry* stop. *Wardlow*, 528 U.S. at 123-26. As the Supreme Court explained in *Wardlow*:

> [U]nprovoked flight is simply not a mere refusal to cooperate. Flight, by its very nature, is not "going about one's business"; in fact, it is just the opposite. Allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual's right to go about his business or to stay put and remain silent in the face of police questioning.

*Wardlow*, 528 U.S. at 125.

In this case, Lawshea not only ran away from the officer, but he sprinted around the same building three times and refused to stop when Officer McCord twice ordered him to stop. Such flight gave Officer McCord reasonable suspicion to conduct a *Terry* search when Lawshea failed to stop after Officer McCord twice directed him to do so, Officer McCord's suspicions were further increased. *See Lenoir*, 318 F.3d at 729. Officer McCord's eight years of experience with the Danville Police Department, combined with the fact that Lawshea's flight took place in a high-crime area with

several recent fights and a stabbing are also considerations. The Supreme Court recognized these circumstances, explaining that the characteristics of a location and the factors at play surrounding it, including whether the stop occurred in a "high crime area," are among the relevant contextual considerations in a *Terry* analysis. *Wardlow*, 528 U.S. at 124. Since *Wardlow*, we have made it clear that when a suspect attempts to flee from the police, the officers have reasonable suspicion to pursue the suspect in order to conduct a *Terry* stop. *Breland*, 356 F.3d at 791.

While Lawshea claims that his case is vastly different from *Wardlow*, the differences are minor and lack constitutional significance. If anything, the factual situation in *Wardlow*, with several officers and four squad cars (thus, a more significant showing of force) is a more intimidating scene than this case, with a lone officer in a squad car. Lawshea attempts to distinguish his case from *Wardlow* since he walked away for a few seconds before running away from the officer, while the suspect in *Wardlow* ran immediately upon seeing the police officers. But again, our cases have held that this difference is without a constitutional distinction. *See*, *e.g.*, *Baskin*, 401 F.3d at 793 (finding reasonable suspicion where suspect's car first slowly approached police, then accelerated away); *Breland*, 356 F.3d at 790 (finding reasonable suspicion although the suspect did not flee until the officer said "Police, I want to talk to you"). Finally, while mere presence in a high-crime area does not in and of itself justify an investigatory stop, suspicious flight, no matter the area, does. Notably, "[h]eadlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *Wardlow*, 528 U.S. at 124.

Lawshea next argues that the use of the police dog transformed the *Terry* stop into an unconstitutional custo-

dial arrest that required probable cause. We have long held that "[o]nce police have the reasonable suspicion required to justify an investigatory stop, they may use reasonable means to effectuate that stop." *United States v. Felix-Felix*, 275 F.3d 627, 636 (7th Cir. 2001); *see also United States v. Weaver*, 8F.3d 1240, 1244 (7th Cir. 1993) ("It is well-established that '[a] measured use of force . . . appropriate to accomplish the purposes of [the] investigatory stop' does not convert a *Terry* stop into an arrest.") Furthermore, the defendant's own actions in resisting an officer's efforts may be considered when a reviewing court analyzes whether an investigatory stop has transformed into an arrest. *Felix-Felix*, 275 F.3d at 636.

In Lawshea's case, had he stopped his flight the first or second time Officer McCord ordered him to stop, the use of the police dog would have been unnecessary. Lawshea's own actions prompted McCord to release the police dog to apprehend Lawshea and conduct a *Terry* stop. We agree with the district court that the use of a police dog may have been the best alternative use of force to apprehend the fleeing suspect and conduct the *Terry* stop. The use of the police dog, released only *after* Lawshea ignored two orders to stop his flight, did not transform the *Terry* stop into an arrest requiring probable cause.

## Conclusion

Accordingly, the judgment of the district court is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*