NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 20, 2007
Decided March 21, 2007

**Before**

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 06-3631

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee,*<br><br>v.<br><br>ERIC T. WHITE,<br>*Defendant-Appellant.* | Appeal from the United States District Court for the Central District of Illinois.<br><br>No. 05-10077-001<br><br>Joe Billy McDade,<br>*Judge.* |

**O R D E R**

Eric White pleaded guilty to possessing a machine gun, 18 U.S.C. § 922(o), and reserved his right to challenge on appeal the district court's denial of his motion to suppress the gun. The court calculated a guidelines imprisonment range of 77 to 96 months, but after the government moved under U.S.S.G. § 5K1.1 for a term below that range, the court sentenced White to 48 months' imprisonment followed by three years' supervised release. White appeals, but his lawyer has moved to withdraw under *Anders v. California,* 386 U.S. 738 (1967), because he cannot discern any nonfrivolous arguments to pursue. We invited White to respond to counsel's brief, *see* Cir. R. 51(b), but he did not do so. Accordingly, we will consider only those potential issues identified in counsel's facially adequate brief. *See United States v. Schuh,* 289 F.3d 968, 973-74 (7th Cir. 2002).

White was arrested in Peoria, Illinois, after a series of events recounted by city police officers Jeff Adams and Timothy Moore at the suppression hearing. The officers testified that they learned in September 2005 that White had been hired to kill a gang member who was embroiled in a conflict with a rival gang. The officers were familiar with White, a convicted felon. On the morning of September 27, Adams and Moore were conducting surveillance from an unmarked car, having received information that White spent time in the area. At around 11:00 a.m. the officers saw White and two other men walk down the street. White entered a house while his companions waited outside. It was about 70 degrees, and when White went inside, he was wearing shorts and a tank top. When he emerged minutes later wearing a winter coat and stocking cap, the officers immediately were suspicious.

White and the other two men resumed walking down the street. Officer Adams drove alongside them, and Officer Moore yelled either "E. White, hold up a minute" or "E. White, can you hang on a minute?" White immediately turned and fled, looking back over his shoulder toward the officers and clutching his waistband. Moore chased him on foot while Adams pursued him in the car. Adams caught up to him, yelled "I'm the police, stop," and got out of the car to chase White on foot. At that point he saw White pull from under his coat a 9mm TEC-9 fully automatic pistol, which meets the definition of a machine gun. Adams pointed his gun at White and ordered him to the ground. A tussle ensued, which Moore joined, but White eventually submitted and the officers arrested him.

White also testified at the hearing, providing a different version of events. He described the weather on that September day as "cool," and testified that he donned the jacket and hat because he previously left them at the house and did not want to leave them there. He stated that, when Officer Moore asked if he could hang on for a minute, he responded by inquiring if he was under arrest. Moore, he said, answered "No, you're not under arrest, I just want to ask you some questions." According to White, he told the officers he did not want to talk, but one of them opened the car door so he fled. White denied possessing a gun that day. To rebut this testimony, another Peoria officer, John Couve, testified that after White was booked he confessed to owning and possessing the gun.

At the close of the hearing, the district court denied White's motion from the bench. The court reasoned that the officers had reasonable suspicion to stop White based on their knowledge of his role in a potential hit and his suspicious attire. The court concluded that this suspicion coupled with White's flight gave the officers authority to chase him, and that they had probable cause for the arrest from the moment they saw the gun.

In his *Anders* submission, counsel first considers whether White could challenge the suppression ruling by arguing that his encounter with the officers was an illegal seizure. Not every encounter with a police officer is a seizure within the meaning of the Fourth Amendment. *See United States v. Adamson*, 441 F.3d 513, 519-20 (7th Cir. 2006). No seizure occurs where an officer simply approaches an individual and asks a question that causes him to pause long enough to hear the question and either answer or decline to do so. *Id.*; *see also United States v. Breland*, 356 F.3d 787, 791 (7th Cir. 2004). Here, when Officer Moore asked White if he would "hold up" or "hang on" for a minute, no seizure occurred; White was free to leave. He did so, and rapidly. His flight, combined with the suspicious attire and information implicating him in a potential hit, provided reasonable suspicion for the officers to stop him. *See Illinois v. Wardlow*, 528 U.S. 119, 124-25 (2000); *United States v. Lawshea*, 461 F.3d 857, 859-60 (7th Cir. 2006). White, though, was not seized until he was finally subdued, *see County of Sacramento v. Lewis*, 523 U.S. 833, 843-44 (1998) (noting that "a police pursuit in attempting to seize a person does not amount to a 'seizure' within the meaning of the Fourth Amendment"), and by then Officer Adams had seen the gun and had probable cause to arrest, *see United States v. Parra*, 402 F.3d 752, 763-64 (7th Cir. 2005) (noting that probable cause exists when an officer reasonably believes a suspect is committing an offense). Accordingly, counsel properly concludes that there is no nonfrivolous basis on which to challenge the district court's suppression ruling.

Counsel also addresses whether White could challenge the validity of his guilty plea. But counsel reports that his client wishes to have his plea vacated only if he succeeds in overturning the adverse suppression ruling. Because counsel correctly concludes that any suppression argument would be frivolous, he properly refrains from addressing the validity of the guilty plea. *See United States v. Knox*, 287 F.3d 667, 671 (7th Cir. 2002).

Finally, counsel considers whether White could challenge the reasonableness of his prison sentence, but properly concludes that such a challenge would be frivolous. White did not object to the district court's calculation of his guidelines range, nor did his trial counsel ask the court to consider any particular sentencing factor under 18 U.S.C. § 3553(a). White received a prison term that is *half* the upper end of the range, and we have noted that it is "hard to conceive" of a sentence below the range being "unreasonably high." *See United States v. George*, 403 F.3d 470, 473 (7th Cir. 2005). Counsel has been unable to articulate any reason why it might be, and nothing we see in this record suggests that it is.

We therefore GRANT counsel's motion to withdraw and DISMISS the appeal.