In the

# United States Court of Appeals

### For the Seventh Circuit

_____

No. 07-3908

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CLARENCE GROGG,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 07 CR 27—**Larry J. McKinney**, *Judge.*

_____

ARGUED JUNE 6, 2008—DECIDED JULY 28, 2008

_____

Before BAUER, RIPPLE and MANION, *Circuit Judges.*

BAUER, *Circuit Judge.* On November 16, 2007, Clarence Grogg entered a conditional plea of guilty to an indictment charging him with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The only issue before us on the appeal is the district court's denial of Grogg's motion to suppress evidence obtained by the government when law enforcement agents searched his car at the Indianapolis International Airport. For the following reasons, we affirm Grogg's conviction.

## I.  BACKGROUND

On September 18, 2006, Special Agent Eric Jensen of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), notified the Indianapolis office of the Bureau of Customs and Immigration Enforcement that Clarence Grogg, a suspicious person, would be arriving that day at the Indianapolis International Airport from France via Detroit.

The government had been monitoring Grogg based on a report from a "concerned citizen" that Grogg possessed weapons or drugs, and that he might be involved in child molestation or child pornography.

The investigation disclosed that Grogg's car had been left in short-term parking at the airport for more than twenty days, accruing parking fees in excess of five hundred dollars; that Grogg had changed his return flight multiple times; and that at some point prior to Grogg's return, Indiana State Police had used a narcotics-detecting dog to perform a sweep of Grogg's car in the airport parking lot and the dog had positively alerted.

Two plain-clothed agents waited for Grogg's plane to arrive in Indianapolis. After disembarking, Grogg appeared to be very confused. He spoke with several ticket agents and then proceeded to the baggage claim area. Before getting his bags, Grogg stepped outside to smoke a cigarette. The agents followed Grogg and overheard him ask an unidentified woman for a ride to a hotel. While he was loading his luggage into her car, the agents approached Grogg, identified themselves as law enforcement officers, and asked to speak with him. Grogg agreed. The agents explained to Grogg that they had observed him acting suspiciously and that they were

looking for people carrying contraband. At some point during the conversation, the agents instructed the woman who had offered to drive Grogg to a hotel to leave.

During the encounter, Grogg was very cooperative and insisted that he did not have any contraband. Grogg told the agents, "You can search my bags. . . . You can search anything you want." The agents searched Grogg's bags but found nothing illegal. The agents then asked him if he had a car parked at the airport and what he was doing in Indiana. Grogg, a Virginia resident, first told the agents that he was in Indiana visiting a friend (whom he refused to name), but then changed his story and said he was in town for an air show. Grogg confirmed that he had a car at the airport and that it was parked in the short-term parking lot. The agents asked Grogg if they could search his car, to which Grogg responded, "Sure. I have nothing to hide."

At the car, the agents requested and again received Grogg's permission to search the car. The agents also asked for and received Grogg's permission to search a suitcase found in the backseat of the car. In the suitcase, the agents found a Weihrauch .357 magnum revolver containing six live rounds of .38 special ammunition and a box of ammunition. Grogg appeared surprised and stated that he had forgotten about the weapon, and that it belonged to his late father. Grogg was arrested, and because he had two prior felony convictions, he was indicted on March 7, 2007 for one count of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

On August 1, 2007, Grogg filed a motion to suppress, arguing that he had been stopped by the agents without reasonable suspicion and that his consent to search the suitcase in the car was invalid. The district court ruled that the agents had reasonable suspicion to seize Grogg

in light of the positive dog alert on Grogg's car. Accordingly, the district court found that Grogg's consent to the searches was valid.

## II. DISCUSSION

On appeal, Grogg argues that he was stopped without reasonable suspicion and that his subsequent consent to search both his car and the suitcase inside the car was therefore "fruit of the poisonous tree." Grogg seeks to distinguish his circumstances from the "typical drug dog cases" based on the break in the temporal connection between Grogg and his vehicle. Grogg argues that he was seized almost three weeks after he had left his car in the parking lot at the airport and that he was not even attempting to return to the car when the agents seized him. So, Grogg asserts, the stop while Grogg was loading his baggage into the unidentified woman's car lacked reasonable suspicion of criminal conduct and should be suppressed and that his consent to the searches stemmed from this improper seizure and was thus invalid.

We review a district court's legal conclusions on a motion to suppress, such as whether reasonable suspicion existed to justify a stop, *de novo*, while findings of fact are reviewed for clear error. *United States v. Fiasche*, 520 F.3d 694, 697 (7th Cir. 2008) (citing *United States v. Riley*, 493 F.3d 803, 808 (7th Cir. 2007)).

The Fourth Amendment protects against unreasonable searches and seizures. Police are permitted, however, to make investigatory stops limited in scope and executed through the least restrictive means reasonable, referred to as *Terry* stops. *See Terry v. Ohio*, 392 U.S. 1 (1968); *United States v. Swift*, 220 F.3d 502, 506 (7th Cir. 2000). *Terry* stops are permissible so long as they are supported by rea-

sonable and articulable suspicion that the suspect has committed a crime or is about to do so. *United States v. LePage*, 477 F.3d 485, 487 (7th Cir. 2007); *United States v. Lawshea*, 461 F.3d 857, 859 (7th Cir. 2006)*.* Reasonable suspicion is less than probable cause, but more than a hunch. *Fiasche*, 520 F.3d at 697; *Lawshea*, 461 F.3d at 859. In evaluating the reasonableness of a *Terry* stop, we examine "the totality of the circumstances known to the officer at the time of the stop, including the experience of the officer and the behavior and characteristics of the suspect." *Lawshea*, 461 F.3d at 859. While certain behavior in isolation may have an innocent explanation, that same behavior, when viewed in the context of other factors at play, may amount to reasonable suspicion. *Id.*

We agree with the district court that the agents' questioning of Grogg amounted to a *Terry* stop when they directed his ride to leave without him, and that the positive dog alert to Grogg's vehicle created, at a minimum, reasonable suspicion warranting the stop. Grogg makes no argument on appeal that the canine sniff of his car in the airport's parking garage was improper, and rightfully so, since the Supreme Court has made clear that a dog sniff in a public place is not a search because it is unique, in that it does not intrude on or disclose any information other than whether contraband is present, and a possessor of contraband cannot maintain a legitimate expectation that the contraband's presence will not be revealed. *See United States v. Place*, 462 U.S. 696, 706-07 (1983) (finding dog sniffs *sui generis* under the Fourth Amendment).[1]

---

[1]   The fact that the narcotics/currency detecting dog turned out to be incorrect in positively alerting to Grogg's vehicle is of no

(continued...)

In addition to having the positive dog alert on Grogg's car, the detaining agents had additional information that supported a reasonable suspicion that Grogg had committed or was about to commit a crime. The agents knew of a concerned citizen's report that alleged Grogg may have weapons or drugs, and might be involved in child molestation or pornography. The agents were also aware that Grogg had changed his return flight multiple times. *See United States v. Yang*, 286 F.3d 940, 949 (7th Cir. 2002) (listing defendant's travel itinerary as a factor to consider for reasonable suspicion purposes by customs agents). Then, upon disembarking in Indianapolis, the agents observed Grogg acting oddly, meandering the concourse confused before eventually asking a woman for a ride to a nearby hotel despite having a car parked at the airport. The agents also knew that Grogg had left his car in short-term parking for nearly three weeks, racking up over five hundred dollars in parking fees. *See id.* (listing nervous or unusual conduct as a factor to consider for reasonable suspicion purposes). During questioning, Grogg refused to give the friend's name who he initially claimed to be visiting, and then changed his story as to why he was in Indiana and said he was there for an air show. *See id.* (listing evasive or contradictory answers as

---

[1] (...continued)

consequence here, since the record contains no evidence that would call into question the premise that drug-detection dogs alert only to contraband, nor has Grogg preserved the issue for appeal. *See Illinois v. Caballes*, 543 U.S. 405, 409 (2005) (noting that the error rate of narcotics-detection dogs is irrelevant unless there is evidence that legitimate private information is revealed that would engage a Fourth Amendment privacy interest).

factors to consider for reasonable suspicion purposes). This information, together with the positive canine alert on Grogg's car, compels us to conclude that the agents had articulable facts that support the reasonable suspicion necessary to conduct a *Terry* stop.

Grogg does not deny giving his consent to the search of his car and the suitcase containing the gun therein. Since there was no illegal search, we need not discuss his assertion that his consent was the "fruit of the poisonous tree." *See United States v. Schoals*, 478 F.3d 850, 853 (7th Cir. 2007).

### III. CONCLUSION

The conviction is AFFIRMED.