NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 27, 2009
Decided March 9, 2009

**Before**

RICHARD A. POSNER, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 08-2456

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *Plaintiff-Appellee* <br><br> *v.* <br><br> TERRY E. MACLIN, <br> *Defendant-Appellant.* | Appeal from the United States District Court for the Northern District of Indiana, South Bend Division. <br><br> No. 3:07-cr-00077 RM <br><br> Robert L. Miller, Jr., <br> *Chief Judge* |

**ORDER**

Terry Maclin was charged with possession of a firearm by a felon. *See* 18 U.S.C. § 922(g). He unsuccessfully moved to suppress the gun on the ground that it was the fruit of an illegal seizure. A jury found him guilty after a one-day trial on March 17, 2008. Maclin now appeals.

Just after midnight on December 9, 2006, Karl Miller, of the Elkhart, Indiana police department, was dispatched to an apartment complex to investigate reports of vehicle break-ins. It was cold and, although it was not snowing, the ground was covered by about two inches of snow. While patrolling the parking lot for suspects, Miller saw only one person, Maclin, who was walking west on a sidewalk bordering the lot. When Miller pulled

within 60 to 70 yards, Maclin turned and looked in Miller's direction and then veered off the sidewalk onto a grassy area behind a building that blocked him from Miller's view.

Corporal Miller suspected that Maclin was involved in the break-ins given that he was out so late on a very cold night and appeared to be avoiding him. Miller parked his car at the edge of the building behind which Maclin had disappeared and headed on foot to cut off Maclin. As Miller rounded the corner, Maclin again changed his route. Miller closed the gap to 30 or 40 yards and shouted for Maclin to stop and come toward him. According to Miller, Maclin looked over his shoulder at the officer but continued walking, with Miller on his tail. Miller testified that after he shouted several more times, Maclin halted and turned to face him but not before dropping something in the snow. Reeking of alcohol (he later registered a .20 percent on a breathalyser test–over twice the legal limit for driving), Maclin finally approached Corporal Miller, who arrested him for public intoxication.

After backup officers arrived, Corporal Miller searched for the object that had fallen into the snow, and he found a black handgun. Miller and his fellow officers testified that there was some snow on the gun but it was not covered and that the only footprints near the gun were made by Maclin and Miller.

Maclin conceded at the suppression hearing that he was drunk, but denied dropping anything, much less a gun, in the snow. He also denied that he tried to evade Corporal Miller, asserting instead that he stopped walking as soon as he heard Miller call. Maclin maintained that he came to the apartment complex with a friend, intending to go to another's apartment, but they became separated. So the friend, who was already at the destination apartment, attempted to provide directions to Maclin over his cell phone. Because he was quite drunk and unfamiliar with the apartment complex, Maclin said, he had difficulty finding his destination and changed directions several times. And because he was talking on his cell phone, Maclin continued, he did not hear Miller's initial summonses. Corporal Miller testified, though, that Maclin was not carrying a phone at the time of his arrest and that police did not find a cell phone in the snow. And though Maclin maintained that he gave his friend's name to the officers who arrested him, Miller testified that Maclin was unable to tell the police the name of his purported friend, who never surfaced as a witness at the suppression hearing.

In denying Maclin's motion, the district court reasoned that the report of vehicle break-ins coupled with Maclin's apparently evasive behavior gave Corporal Miller reasonable suspicion to stop Maclin. The court found Miller's interpretation of Maclin's behavior credible and concluded that Miller reasonably believed that Maclin was ignoring

and evading him even if Maclin was, as he claimed, drunkenly but innocently searching for his friend while talking on a cell phone.

At trial, Corporal Miller and his fellow Elkhart officers gave the same account of events that night.  The government also called a firearms expert who testified that the gun was made in Maryland and, thus, had been transported in interstate commerce before Maclin possessed it.   Maclin stipulated that he had a previous felony conviction but did not take the stand and called no witnesses of his own.

## Analysis

Maclin challenges his conviction on two grounds.  First, he renews his contention that the police were not justified in ordering him to stop and so the gun, which the parties agree was discovered pursuant to the stop, should have been excluded.  Second, Maclin submits that the evidence was insufficient for the jury to find him guilty of possessing a firearm that had been transported in interstate commerce.

As an initial matter, it is unclear why the government never challenged Maclin's standing to move for suppression.  The Fourth Amendment protects only places and items in which a person has a legitimate expectation of privacy, *see United States v. Yang*, 478 F.3d 832, 835 (7th Cir. 2007), and there is no expectation of privacy in abandoned property, *United States v. Pitts*, 322 F.3d 449, 455-56 (7th Cir. 2003).  Because a reasonable person in Corporal Miller's position would conclude that Maclin abandoned the gun by dropping it before he complied with the command to stop walking and approach the officer, s*ee United States v. Basinski*, 226 F.3d 829, 836 (7th Cir. 2000)*; United States v. Martin*, 399 F.3d 750, 752 (6th Cir. 2005) (concluding defendant abandoned gun thrown away during police pursuit), the district court might have denied Maclin's motion to suppress on the ground that he lacked standing.  But the government, which must establish abandonment by a preponderance of the evidence, *Basinski*, 226 F.3d at 83, never raised the issue in the district court and does not do so now.

When reviewing a motion to suppress, we examine the district court's factual findings for clear error and, if the evidence was obtained without a warrant, its legal conclusions de novo.  *United States v. McIntire*, 516 F.3d 576, 578 (7th Cir. 2008).  Faced with conflicting explanations of Maclin's conduct, the district court credited Corporal Miller over Maclin.  Miller's testimony was not at all improbable, *see United States v. Thornton*, 197 F.3d 241, 247 (7th Cir. 1999), so we turn to the legal conclusions.

The parties agree that Maclin's encounter with Corporal Miller should be reviewed under *Terry v. Ohio*, 392 U.S. 1 (1968), which holds that a police officer may conduct "a brief,

investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry*, 392 U.S. at 30). "[R]easonable suspicion is less than probable cause but more than a hunch," *United States v. Lawshea*, 461 F.3d 857, 859 (7th Cir. 2006), and whether a police officer had reasonable suspicion to detain a subject is an objective inquiry based on the totality of the circumstances known to the officer at the time of the encounter, *United States v. Hicks*, 531 F.3d 555, 558 (7th Cir. 2008). Thus, even behavior that is innocent in isolation may in a particular context give rise to a reasonable suspicion. *Lawshea,* 461 F.3d at 859. Ultimately, the reasonable suspicion determination is based on "commonsense judgments and inferences about human behavior." *Wardlow*, 528 U.S. at 125.

Maclin contends that his presence in an area of reported criminal activity did not create a reasonable suspicion, particularly because there is no evidence that Corporal Miller knew the origin of the report he was dispatched to investigate. But Maclin's presence at the apartment complex in the middle of a very cold night, just after reports of vehicle break-ins, although maybe not conclusive, was certainly relevant to the reasonable suspicion calculation. *See United States v. Baskin*, 401 F.3d 788, 793 (7th Cir. 2005) (explaining that driver's rapid acceleration after seeing marked police car during the early hours of morning, in remote park where methamphetamine lab had recently been discovered, contributed to reasonable suspicion); *United States v. Caruthers*, 458 F.3d 459, 467 (6th Cir. 2006) (concluding that time, 1:20 a.m., and location, a high-crime area, were relevant to determination of reasonable suspicion). Maclin contends that the reports that brought Miller to the complex could not factor into his response unless he knew who made the calls. This argument is frivolous.

Maclin also argues that his attempts to avoid Corporal Miller did not create a reasonable suspicion. Although a citizen is not obligated to pause and cooperate with police when approached without reasonable suspicion or probable cause, fleeing in the face of police officers is a pertinent factor in assessing reasonable suspicion. *Wardlow*, 528 U.S. at 125 (citing *Florida v. Bostick*, 501 U.S. 429, 437 (1991); *Florida v. Royer*, 460 U.S. 491, 498 (1983)). Maclin contends, though, that he did not run from Miller; he simply walked away. In fact, there is no constitutional distinction between running away from the police and walking away evasively. *See Lawshea*, 461 F.3d at 860; *United States v. Humphries*, 372 F.3d 653, 660 (4th Cir. 2004); *United States v. Valentine*, 232 F.3d 350, 357 (3rd Cir. 2000); *cf. Caruthers*, 458 F.3d at 466 ("[T]he speed of the suspect's movements may be relevant in the totality of the circumstances."). Maclin's failure to heed police commands to stop may also suggest reasonable suspicion. *See United States v. Lenoir*, 318 F.3d 725, 729 (7th Cir. 2003); *Lawshea* 461 F.3d at 860.

Furthermore, any type of objectively "furtive movements made in response to a police presence" may be considered by police in the totality of the circumstances. *Caruthers*,

458 F.3d at 466. Maclin changed directions as soon as he saw Corporal Miller, leaving the sidewalk for a snow-covered area that placed a building between the two of them and again when Miller came around the building. Then, before finally nearing Corporal Miller, he dropped something, further contributing to Miller's reasonable suspicion, *see United States v. Carter*, 360 F.3d 1235, 1240 (10th Cir. 2004). Considering these factors together with Maclin's lone presence, on a cold winter night in a parking lot where vehicle break-ins had just been reported, the district court was correct to conclude that Corporal Miller had reasonable suspicion to stop Maclin.

Maclin's remaining contention about the sufficiency of the evidence is frivolous. When reviewing the evidence underlying a conviction, we consider the evidence in the light most favorable to the verdict and draw all inferences in the government's favor. *United States v. Craft*, 484 F.3d 922, 925 (7th Cir. 2007). Consequently, we will not reverse Maclin's conviction unless the record contains no evidence from which a rational jury could have found him guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Farris*, 532 F.3d 615, 618 (7th Cir. 2008). Maclin does not dispute that he had a felony conviction before this case, and the government's evidence that the gun was made in Maryland satisfies the commerce element of § 922(g). *See United States v. Rice*, 520 F.3d 811, 815 (7th Cir. 2008). Possession, then, is the only element in dispute.

Maclin contends that the evidence establishing his possession of the gun—Corporal Miller seeing him drop something and then finding the gun in that spot—is insufficient. He observes that his fingerprints were not found on the gun and suggests that it just as easily could have belonged to someone who lived in one of the apartments surrounding the area where it was found. The government, though, does not have to rule out every conceivable innocent explanation for its evidence, *see United States v. Humphreys*, 468 F.3d 1051, 1054 (7th Cir. 2006), and, anyway, Maclin's theory approaches the absurd. Miller saw Maclin drop something, immediately went to investigate, and found only the gun where Maclin had just been standing. The ground, but not the gun, was covered by snow, and only Maclin's footprints led to it. A rational jury could infer from those circumstances that Maclin was holding the gun and dropped it in the hope of avoiding detection.

Accordingly, we AFFIRM Maclin's conviction.