**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 18, 2009
Decided November 25, 2009

DIANE P. WOOD, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

JOHN D. TINDER, *Circuit Judge*

No. 09-1863

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee*, | Court for the Northern District of |
| | Indiana, Fort Wayne Division. |
| *v.* | |
| | No. 1:07-CR-67-TLS |
| MARCUS A. HAYDEN, | |
| *Defendant-Appellant*. | Theresa L. Springmann, *Judge*. |

**ORDER**

Marcus Hayden, also known by his "street name" AWOL, entered a conditional guilty plea to a charge of carrying a firearm during and in relation to a drug trafficking crime. *See* 18 U.S.C. § 924(c). After his plea, two other counts against him were dismissed and he was sentenced to serve a term of 60 months. The condition on his plea was his right to challenge, on appeal, the order of the district court denying his motion to suppress the gun and drugs that he was found to be carrying when he was searched on a street in Fort Wayne, Indiana. Today we resolve Hayden's appeal, starting with the facts as developed at a suppression hearing in the district court.

Rashonda Wallace called 911 on June 6, 2007, to report to the Fort Wayne Police Department that she had been robbed at gunpoint by two people with whom she had been playing cards. One was a juvenile and the other was someone she knew only as Marcus or

as AWOL. Later that day, she gave Detective Sam Quate a physical description of both suspects. She also identified Hayden out of a photo array as the robber.

Detective Quate and Detective Brent Roddy asked Officer Chris Hoffman to find Hayden so he could be questioned as a suspect in the robbery. Two days later, on June 8, Officer Hoffman recognized Hayden on Pontiac Street in Fort Wayne. Hoffman radioed other officers in the area that the detectives wanted to question Hayden about an armed robbery. Officers Gary Hensler and Anthony Smith drove to the location where Officer Hoffman had spotted Hayden. Officer Hensler recognized Hayden from previous events-- he had even arrested him recently on an outstanding warrant. Officers Hensler and Smith knew their colleagues believed Hayden was a suspect in an armed robbery, although they did not know the details of the crime. En route to Pontiac Street, they checked the department's computer system, which flagged Hayden as a "party armed" (meaning that an officer had previously encountered Hayden carrying a weapon) and as having resisted law enforcement in the past. The system also noted that Hayden was designated as "Code X," warning officers that he was dangerous. Extra caution was recommended.

Officer Hensler got out of the squad car and approached Hayden, telling him that the police needed to talk to him. Hayden told Hensler that there were no warrants for his arrest, and he continued walking away. Also, he extended his left hand toward his left rear pants pocket. Officer Hensler, approximately five feet away, was concerned that Hayden was reaching for a weapon concealed in his baggy pants. Officer Hensler grabbed Hayden's left arm and felt Hayden tense up, causing him to worry that Hayden might become aggressive. At this point, Hayden repeated that there were no warrants for his arrest, and he insisted that the officers were not allowed to touch him if he showed them identification.

After Officer Smith emerged from the squad car and took hold of Hayden's right arm, Hensler patted down the outside of Hayden's left rear pants pocket--the pocket Hayden had been reaching for--and sensed that it contained a bag of marijuana. From Hayden's pocket, Officer Hensler removed a clear plastic bag containing more than 40 grams of marijuana. The officers handcuffed Hayden, placed him under arrest, and patted him down further for their safety, finding a loaded handgun in his waistband.

Hayden moved to suppress the drugs and gun, claiming that they were the fruit of an illegal search and seizure. Based on the facts we just recited as developed at the hearing, the motion to suppress was denied. The district judge determined that probable cause existed for an arrest at the time and, alternatively, that the encounter was kosher under *Terry v. Ohio*, 392 U.S. 1 (1968). When considering a denial of a motion to suppress, we review the district court's legal conclusions de novo and its factual findings for clear error.

*United States v. James*, 571 F.3d 707, 713 (7th Cir. 2009); *United States v. Grogg*, 534 F.3d 807, 810 (7th Cir. 2008); *United States v. Taylor*, 471 F.3d 832, 839 (7th Cir. 2006).

Hayden first renews his contention that his arrest was unlawful because the officers lacked probable cause. He appears to assert that an arrest occurred when Officer Hensler grabbed his arm and restrained him. At the moment of the arrest, Hayden argues, there was no probable cause because (1) Detective Quate, who was investigating the armed robbery, had not obtained an arrest warrant, despite having time to do so, and (2) Officer Hensler knew there was no warrant and knew nothing of Hayden's involvement in the armed robbery beyond the fact that detectives wanted to question Hayden about it.

Officers have probable cause if, based on the facts known to them at the time of the arrest, a prudent person would be warranted in believing that the suspect has committed an offense. *Smith v. Gomez*, 550 F.3d 613, 618 (7th Cir. 2008). When officers have probable cause, they may, of course, arrest a suspect without a supporting warrant. *Id.*; *see also Woods v. City of Chicago*, 234 F.3d 979, 992-93 (7th Cir. 2000). An arresting officer need not have personal knowledge of facts establishing probable cause to arrest. When officers are in communication regarding a suspect, one officer's knowledge is imputed to the others under the collective knowledge doctrine. *See United States v. Hensley*, 469 U.S. 221, 232-33 (1985); *United States v. Sawyer*, 224 F.3d 675, 680 (7th Cir. 2000).

The district court correctly applied the collective knowledge doctrine and concluded that probable cause existed. It ruled that Detective Quate was aware of facts establishing probable cause to arrest Hayden for the armed robbery and that, because communication within the department about locating Hayden for questioning reached the arresting officers, Detective Quate's knowledge of those facts could be imputed to them.

Hayden contends that because nothing suggests that any member of the Fort Wayne Police Department believed there was probable cause to arrest him, no facts establishing probable cause could have been imputed under the collective knowledge doctrine to Officers Hensler and Smith, and that their arrest of him was therefore invalid. According to Hayden, Detective Quate neither sought an arrest warrant nor asked the officers looking for Hayden to arrest him on sight, and thus "gave no objective indication" of having facts and circumstances within his knowledge that would warrant a prudent person's belief that Hayden had committed a crime.

Whether Detective Quate believed Hayden committed a crime, however, is irrelevant in determining whether Officers Hensler and Smith had probable cause to arrest. We do not examine an officer's actual beliefs about a suspect, but instead consider whether the facts

and circumstances within the officer's knowledge "are sufficient to warrant *a prudent person, or one of reasonable caution*, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."  *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)) (emphasis added).

Moreover, if a reasonably credible victim informs police that someone has committed a crime, the police have probable cause to arrest the alleged culprit.  *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 680 (7th Cir. 2007); *Reynolds v. Jamison*, 488 F.3d 756, 765 (7th Cir. 2007).  Based on the facts in this case, Wallace was reasonably credible in informing the police that Hayden had committed the crime, and Detective Quate therefore had probable cause to arrest him; that probable cause was then imputed to the arresting officers.

Finally, even if probable cause were lacking, the brief encounter here, if viewed only as an investigatory stop, was permissible under *Terry*.

For these reasons, the order denying Hayden's motion to suppress the gun and drugs he was carrying is AFFIRMED.