**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois 60604

Argued October 29, 2009
Decided December 1, 2009

**Before**

JOEL M. FLAUM, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 09-1931

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *Plaintiff-Appellee*, | Appeal from the United States District <br> Court for the Central District of Illinois. |
| *v.* | No. 07 CR 40094 |
| TIMOTHY A. BROWN, <br> *Defendant-Appellant*. | Joe Billy McDade, *Judge*. |

**O R D E R**

In September 2007, Timothy A. Brown asked his girlfriend, Annie Bell, to rent a car for him to drive to Las Vegas, NV, so that he could shop for a dump truck for his business. Bell used her credit card to rent a sport-utility vehicle ("SUV") from a car rental company in Austintown, OH. Bell gave Brown the keys to the automobile and permission to drive it to Las Vegas, even though she was the only authorized driver listed in the rental agreement. Brown drove to Las Vegas and then to California. On his return trip to Ohio, Illinois State Police Trooper Andrew Fratzke pulled Brown over for speeding. Brown presented the trooper with his driver's license and the rental agreement for the SUV and told him that he was on his way back from Las Vegas. Trooper Fratzke returned to his squad car and ran a check on Brown's license and the automobile's plates. The license check revealed that Brown had previous drug offenses. Trooper Fratzke prepared a written warning for the speeding infraction and walked back to the SUV. He then asked Brown to step to the front

of the vehicle to sign the warning, after which Trooper Fratzke returned Brown's driver's license and the rental agreement. During the next minute, Trooper Fratzke commented that it didn't make sense that Brown would travel from Ohio to Las Vegas, stay only a day or two, and then drive back. He also asked Brown if he had any illegal narcotics in the automobile (Brown said he did not) and requested permission to walk Viper, a drug-detection dog, around the perimeter of the SUV. After receiving Brown's consent,[1] Trooper Fratzke began walking Viper around the automobile. Two minutes later, Viper alerted to the scent of narcotics at the rear bumper of the SUV. Trooper Fratzke then searched the back of the vehicle, found seventeen kilos of cocaine and one pound of marijuana, and arrested Brown.

Subsequently, a grand jury indicted Brown for possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). Brown filed a motion to suppress the evidence discovered during the traffic stop, which the district court denied following a hearing. The court held that Brown lacked "standing" to prosecute the motion. Alternatively, assuming Brown had "standing," the court held that the length of his detention was reasonable and found that he had consented to the dog sniff. Brown then entered a guilty plea to the charged offense but reserved his right to appeal the denial of his motion to suppress. The district court sentenced Brown to 240 months' imprisonment. Brown appeals the district court's denial of his motion to suppress.

On appeal, Brown argues that the district court erred in holding that the length of his detention by Trooper Fratzke was reasonable and in finding that he consented to the dog sniff.[2]

---

[1] Brown claimed in the district court and repeats on appeal that he did not consent to the sniff.

[2] Brown also contends that the district court erred in concluding he lacked "standing" to bring the motion to suppress. (We note that the Supreme Court has rejected the use of the standing rubric to describe a person's legitimate expectation of privacy in the place searched. *Minnesota v. Carter*, 525 U.S. 83, 87–88 (1998) (citing *Rakas v. Illinois*, 439 U.S. 128, 139–40 (1978))). There is a division among the courts of appeals regarding whether the driver of a rental vehicle, who is not listed as an authorized driver on the rental agreement but has the permission of the authorized driver to use the vehicle, has a legitimate expectation of privacy in the automobile that is protected by the Fourth Amendment. *Compare United States v. Wellons*, 32 F.3d 117, 119 (4th Cir. 1994) (no), *United States v. Boruff*, 909 F.2d 111, 117 (5th Cir. 1990) (no), *and United States v. Obregon*, 748 F.2d 1371, 1375 (10th Cir. 1984) (no), *with United States v. Thomas*, 447 F.3d 1191, 1199 (9th Cir. 2006) (yes), *and United States v. Muhammad*, 135 F.3d 1223, 1225 (8th Cir. 1998) (suggesting the answer is "yes"); *see also United States v. Smith*, 263 F.3d 571, 586 (6th Cir. 2001) (eschewing a bright-line approach in favor of a totality-of-the-circumstances

In examining a district court's ruling on a motion to suppress, we review its legal conclusions de novo and its factual determinations for clear error. *United States v. Booker*, 579 F.3d 835, 838 (7th Cir. 2009).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]." *Whren v. United States*, 517 U.S. 806, 809–10 (1996). The stop of an automobile is reasonable for Fourth Amendment purposes, however, where "police have probable cause to believe that a traffic violation has occurred." *Id.* at 810.

Brown does not dispute that Trooper Fratzke had probable cause to stop him for speeding. Rather, he contends that the purpose of the stop was completed when Trooper Fratzke issued the written warning and returned to him his driver's license and the rental agreement. He argues that he then was illegally detained when Trooper Fratzke proceeded to comment on the unusual nature of his trip to Las Vegas, asked whether there were any illegal narcotics in the car, and requested permission to conduct a dog sniff. But our opinion in *United States v. Childs*, 277 F.3d 947 (7th Cir. 2002) (en banc), dooms that argument. In *Childs*, we observed that because traffic stops based on probable cause are arrests, the Fourth Amendment does not mandate the release of such arrestees at the earliest possible moment. 277 F.3d at 953–54. Rather, the reasonableness of the detention is the constitutional touchstone, and police properly may ask crime-detecting questions that create little or no inconvenience to the arrestee, even if such queries are unrelated to the purpose of the stop and are unsupported by any suspicion. *Id.* at 954 (citing *Ohio v. Robinette*, 519 U.S. 33 (1996)). Here, the video of the stop shows that Trooper Fratzke's comment about the peculiarity of Brown's quick trip to Las Vegas, question about whether there were illegal narcotics in the SUV, and request to conduct a dog sniff all transpired in less than one minute after he issued the warning to Brown and returned his driver's license and the rental agreement. Brown's detention was reasonable because those questions were minimally (if at all) inconvenient and only briefly extended the length of the stop. Accordingly, the detention did not violate the Fourth Amendment.

Brown also contends his Fourth Amendment rights were violated because he never consented to extension of his detention so that Trooper Fratzke could conduct the dog sniff. Trooper Fratzke, however, testified at the suppression hearing that Brown did give his consent.

---

analysis). But we need not choose a side on this issue because even assuming that Brown did have a legitimate expectation of privacy in the SUV, we ultimately conclude that the search of the SUV was lawful.

And on the video of the stop, although barely discernible, Brown's response to Trooper Fratzke's consent request is in the affirmative. In addition, Trooper Fratzke's words following Brown's response are clearly audible and consistent with Brown having consented.[3] Hence, we see no clear error in the district court's finding that Brown consented to the dog sniff and the concomitant additional detention. The drug-detection dog's alert to narcotics provided probable cause to search the SUV. *United States v. Carpenter*, 406 F.3d 915, 916 (7th Cir. 2005). Therefore, the drugs Trooper Fratzke found in the SUV were discovered pursuant to a lawful search. Accordingly, the district court properly denied Brown's motion to suppress. AFFIRMED.

---

[3] Brown does not explicitly argue that his consent, even if given, was involuntary under the totality of the circumstances. *Schneckloth v. Bustamante*, 412 U.S. 218, 248–49 (1973). Even if his contention that he did not consent could be understood to raise that argument, our review of the entire record reveals no basis for such a finding.