# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-1600

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DENNIS JAMES WOODEN,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:07-CR-00082-RLM—**Robert L. Miller, Jr.**, *Chief Judge*.

ARGUED OCTOBER 15, 2008—DECIDED DECEMBER 29, 2008

Before EASTERBROOK, *Chief Judge*, and COFFEY and
WOOD, *Circuit Judges*.

EASTERBROOK, *Chief Judge*.  Early one Saturday morning
the 911 system in South Bend, Indiana, received this
call from a pay phone:

> I would like to report a black male with a silver
> hand gun. He was arguing with his, ah, girlfriend,
> or whatever. . . . They were walking toward [the]
> 7-Eleven on Miami [Street]. He's tall. He's wearing

a black jacket and blue jean pants. He has the gun
on a holster. And I seen him pull it out.

Police quickly spotted the couple but did not see an ongoing argument; they were eating snack food. But Officer Gary Reynolds thought that an armed domestic quarrel could resume at any time and stopped the pair. A pat-down found the gun, just as the caller had described it. The safety was off; the serial number had been obliterated. Wooden entered a conditional guilty plea to possessing a firearm despite a felony conviction, 18 U.S.C. §922(g)(1), and a second count based on the missing serial number, 18 U.S.C. §922(k). The sentence, 30 months' imprisonment, is modest for these offenses.

Whether the gun should have been suppressed as the fruit of an unlawful search is the question reserved for appeal by the conditional plea. Wooden concedes that the call would have provided adequate support for a *Terry* stop (see *Terry v. Ohio*, 392 U.S. 1 (1968)) if the caller had given his name. But he contends that, because the call was anonymous and the police did not verify any details other than innocuous ones (such as his position and clothing), the holding of *Florida v. J.L.*, 529 U.S. 266 (2000), requires application of the exclusionary rule. The district court found otherwise, concluding that 911 calls reporting an ongoing crime must be treated differently. So we held in *United States v. Drake*, 456 F.3d 771, 775 (7th Cir. 2006). See also *United States v. Hicks*, 531 F.3d 555, 558–59 (7th Cir. 2008) (reporting that every court of appeals that has considered the subject has concluded that *J.L.* does not cover anonymous reports of ongoing crime that require immediate action to ensure public

safety). Wooden wants us to abrogate *Drake* and *Hicks*, but we think them sound.

*Terry* and its successors hold that a stop supported by articulable suspicion is "reasonable" under the fourth amendment. See, e.g., *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000); *United States v. Chaidez*, 919 F.2d 1193 (7th Cir. 1990). Articulable suspicion can be established by an anonymous tip if the police corroborate enough of the tipster's information to imply that the tipster must possess inside knowledge about the details that the police could not otherwise observe. See *Alabama v. White*, 496 U.S. 325 (1990), and the discussion in *J.L.*, 529 U.S. at 270–71. Knowing a tipster's name increases the chance that he can be held accountable (both state and federal governments make it a crime to tell material lies to law-enforcement officials), and knowledge that a tipster has inside information likewise increases the chance that the report of crime is accurate.

But people who report crimes do not invariably claim "inside information" (as the tipsters in *J.L.* and *White* did). The caller in this case told us how he knew that Wooden had a gun: he saw Wooden draw it from its holster in public. Corroboration of other information (such as whether a tall man near the 7-Eleven store was wearing a black jacket and blue jeans) would not make this claim more plausible—but then, the assertions of eyewitnesses to crime generally do not need corroboration, or a history of other accurate reports, to be believed. See, e.g., *Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432 (7th Cir. 1986); cf. *Illinois v. Gates*, 462 U.S. 213 (1983) (a tipster's history of

providing reliable information is not essential to probable cause).

Doubtless greater confidence can be achieved when police know a caller's identity, for then, as the Court observed in *J.L.*, the threat of penalties for lies makes information more reliable. Yet as a practical matter a name given by a caller does not make the tip less anonymous. Suppose that the 911 call in this case had begun: "My name is John Jenkins, and I would like to report. . .". That a caller gives a name does not mean that he *is* John Jenkins (either the President of Notre Dame or any other John Jenkins). Caller ID does not solve this problem for public phones or even home phones, which can be used by multiple people (including guests at a party); some subscribers block the service. Cell phones, which almost always use caller ID, can be stolen. And it would undermine the goal of the 911 system to require a caller to *prove* his identity, perhaps by coming to the station with a driver's license or passport, before the police react to the information. When crime is in progress, prompt action is essential. The fourth amendment prohibits unreasonable searches and seizures, and it has long been understood that, when the police believe that a crime is in progress (or imminent), action on a lesser degree of probability, or with fewer procedural checks in advance, can be reasonable. See, e.g., *Brigham City v. Stuart*, 547 U.S. 398 (2006).

*J.L.* dealt with a situation in which there was no apparent need for haste, in which the caller did not describe how he knew that J.L. was armed, and in which the tip was not recorded (so the police may have misunder-

stood the details). The police could take their time to gather more information, and the Court held that an immediate stop was unreasonable. Our case, by contrast, arises from a recorded 911 call that revealed how the caller knew about the crime and that implied a need for dispatch. Wooden observes that the couple was chatting amicably by the time the police arrived, but the officer explained that domestic violence comes and goes; a man who pulls a gun on his wife or girlfriend may do it again at any moment. (There is also a risk that an armed man may threaten the woman with him that, unless she "acts natural" when the police arrive, she will be beaten or shot later.)

A 911 system designed to provide an emergency response to telephonic tips could not operate if the police had to verify the identity of all callers and test their claim to have seen crimes in progress. A process of testing would frustrate the expedition that often is essential to protect lives and safety. A system that follows an "act fast, verify later" approach creates risks of unjustified action and makes it possible for someone holding a grudge to cause trouble. All of this goes into the calculus of reasonableness, together with the fact that *Terry* stops are brief, and people can quickly go on their way if the call proves to be unfounded. So we reiterate the holding of *Drake* and *Hicks* that a need for dispatch can make reasonable a stop that would not be reasonable if the police had time to investigate at leisure.

The district court did not err in concluding that the circumstances reported to the police implied a need for haste, and that a report by a person claiming to have

seen a gun drawn in public provided articulable suspicion for a *Terry* stop and frisk.

After Wooden's arrest, the person who made the 911 call was identified. Wooden maintains that the caller held a grudge against him and lied when he said that Wooden had drawn his gun on the street—though the caller did know that Wooden was packing heat. But the police are entitled to act on what is known at the time; information turned up later neither vindicates nor condemns a search.

A constitutional obligation to defer action pending an investigation into the possibility that a 911 caller may be out to cause mischief would cripple the emergency-response system; far better to act quickly and later prosecute any mischief-makers who can be caught. Judges must not underestimate the value of deterrence for 911 callers, as well as for those who may be committing other crimes, for as this case shows callers' identity may be pinned down with enough time, whether or not they identify themselves. If this 911 call was an effort by someone who knew an incriminating fact (that Wooden was carrying a gun) to mislead the police by asserting something else that was not true (that Wooden had drawn his gun to intimidate a companion), the best remedy is to prosecute the caller rather than allow a gun-toting felon to escape punishment. The judgment of the district court therefore is

AFFIRMED.