NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued March 2, 2010
Decided April 29, 2010

**Before**

DIANE P. WOOD, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 09-3198

|  |  |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Indiana, Fort Wayne Division. |
| *v.* | No. 1:08-CR-11-TLS-1 |
| HARVEY R. FIELDS, JR., *Defendant-Appellant*. | Theresa L. Springmann, *Judge*. |

**O R D E R**

Harvey Fields, Jr. pleaded guilty to possessing with intent to distribute crack cocaine, 21 U.S.C. § 841(a)(1), and was sentenced to 197 months' imprisonment. He appeals, challenging the denial of his motion to suppress evidence seized from his vehicle in a stop precipitated by a 911 call. We conclude that the officers had reasonable suspicion for the stop and affirm the decision of the district court.

Around 9:00 p.m. on January 19th, 2008, police officers in Fort Wayne, Indiana, received a 911 call reporting a group of "suspicious" people gathering in an alley behind Lutheran Social Services, with what the caller said "looked like" guns. Neither the

Lutheran Social Services building nor nearby businesses were open at that time of the evening. The caller, phoning as she watched the scene unfold from her home, identified herself and said that she was "kinda scared." Pressed for more details by the 911 operator, she noted that the men were African American, they had two vehicles (one of which she described as a "truck or 4x4"), and one of the men displayed what looked like "a big gun." The caller added that the individuals were still in the alley and implored the police to hurry before saying she had to go and hanging up the phone.

The dispatcher transmitted a "party armed" call. Four officers responded and observed two cars and men in the alley. Officer John Drummer arrived first. As he approached the alley, a small car with three African-American men inside drove away. A different officer, Detective Miguel Rivera, pursued that car, while Officer Drummer continued down the alley. Officer Drummer saw a Ford Explorer illegally parked in the alley with its engine running and approached the vehicle to investigate. Officer Marc Deshaies trailed on foot, and Officer Michael Sierks followed in his squad car.

Once the officers were close to the vehicle, Officer Sierks turned on his car's spotlight, and the occupant, Harvey Fields, looked up in surprise. Officer Drummer approached Fields and asked what he was doing in the alley. Fields responded that he was visiting with some friends who had just left. Officer Drummer then asked Fields if he was armed. Fields hesitated, but eventually said "uh, no." Suspicious of Fields's reaction, Officer Drummer asked him to step out of the car. Officers Deshaies and Sierks restrained Fields and conducted a pat-down search while Officer Drummer circled the vehicle, shining his flashlight through the windows. As he was looking into the car, Officer Drummer saw the handle of a gun on the floor behind the front passenger seat. A records check indicated that Fields lacked permission to carry the weapon, and the officers arrested him. A pre-tow inventory of the car soon followed, and as part of the search, Officer Drummer opened the console between the two front seats where he discovered a bag of crack cocaine. Based on the evidence recovered from the car, a grand jury indicted Fields for possessing with intent to distribute crack cocaine.

In a hearing to suppress the gun and drugs, the officers testified to the above facts. Fields disputed their description of the encounter, but the district judge disbelieved him. Following the hearing, Fields argued that even under the officer's version of events, neither his response to Officer Drummer's questioning nor the information that the officers had before they approached his car provided the officers with reasonable suspicion to justify their conduct. He specifically cited as insufficient the information the officers had when they entered the alleyway, including the dispatch that a caller had reported that men were armed. The government responded that the 911 call and the circumstances at the scene were sufficient to create a reasonable suspicion of criminal activity.

The district court denied Fields's motion to suppress. The court reasoned that the 911 caller identified herself and gave sufficient detail of an ongoing emergency to establish reasonable suspicion, and that none of the circumstances following the officers' arrival could have reasonably dispelled their fear that Fields had been involved in the conduct reported by the caller.

Fields's appeal is confined to a single argument: he contends that his initial stop in the alley was unjustified because the 911 call failed to provide the police with reasonable suspicion of criminal activity, and without reasonable suspicion the stop was unjustified. The government responds that Fields waived or forfeited his challenge to the call by failing to argue the point in the district court.

We reject at the outset the government's waiver and forfeiture arguments. Because the government pursues only these arguments on appeal, its brief fails to address the merits of Fields's claim except under the plain-error standard that we would apply in the event of forfeiture. But this approach ignores the fact that, although Fields did not mention the "911 call" by name, he claimed that *nothing* provided the officers with reasonable suspicion to justify their conduct, including the dispatch that a caller observed men who were armed. The language in Fields's objection was sufficient to challenge the 911 call itself. Even a "woefully underdeveloped" argument is not necessarily forfeited when the district court knew and understood the argument the party intended to make. *United States v. Roque-Espinoza*, 338 F.3d 724, 727 (7th Cir. 2003) (finding no forfeiture of due-process argument despite failure to use words "due process"). Although the district court believed that Fields declined to challenge the reasonable suspicion created by the 911 call, the government addressed that claim anyway, and the court resolved it. And because we construe forfeiture principles "liberally in favor of the defendant," *United States v. Canady*, 578 F.3d 665, 670 (7th Cir. 2009), we proceed to the merits.

A district court's decision on a motion to suppress is subject to a dual standard of review. We review legal conclusions de novo and findings of fact for clear error, giving special deference to the district court's determinations on matters of credibility, particularly in the context of suppression hearings. *United States v. James*, 571 F.3d 707, 713 (7th Cir. 2009); *United States v. Hendrix*, 509 F.3d 362, 373 (7th Cir. 2007). Because Fields challenges only the district court's legal conclusion that the 911 call provided reasonable suspicion, we accept the district court's factual findings.

The parties agree that the question in this case is whether the officers' conduct satisfies the reasonable-suspicion standard first articulated in *Terry v. Ohio*, 392 U.S. 1, 30 (1968). Under *Terry* officers may stop a suspect when there is reasonable, articulable

suspicion of criminal activity, *see Illinois v. Wardlow*, 528 U.S. 119, 123 (2000), and they may conduct a pat-down search when they have reason to believe the suspect is armed or otherwise dangerous, *see United States v. Pedroza*, 269 F.3d 821, 827 (7th Cir. 2001). Reasonable suspicion is determined by considering the circumstances known to the officer at the time of the encounter and is "'based on commonsensical judgments and inferences about human behavior.'" *United States v. Baskin*, 401 F.3d 788, 791 (7th Cir. 2005) (quoting *Wardlow*, 528 U.S. at 125); *see United States v. Lawshea*, 461 F.3d 857, 859 (7th Cir. 2006).

Fields challenges the 911 call as a valid basis for the search in two ways. First, he challenges the caller's reliability. Second, he argues that even if the caller was reliable, the information she provided was insufficient to establish reasonable suspicion.

As to the question of reliability, when an individual calls 911, identifies herself, and specifically describes a disturbance that poses a potential threat to public safety, that information is generally presumed reliable. *See United States v. Drake*, 456 F.3d 771, 775 (7th Cir. 2006). Fields takes issue with this standard, arguing that we should not presume this call to be reliable because providing a name does nothing to prove a caller's reliability, and that by giving her name only, this caller was practically anonymous. But we have repeatedly rejected this argument and held that once a caller identifies herself, she is not anonymous. *See, e.g., United States v. Hicks*, 531 F.3d 555, 559 (7th Cir. 2008); *Drake*, 456 F.3d at 774. And when a potential emergency is reported on a 911 call, police are not required to extensively verify a caller's identity before responding. *United States v. Whitaker*, 546 F.3d 902, 909 (7th Cir. 2008) ("[W]hen the police respond to an emergency as a result of a 911 call, the exigencies of the situation do not require further pre-response verification of the caller's identity before action is taken." (citing *Drake*, 456 F.3d at 774-75)).

This brings Fields to his second argument, that the content of this call was insufficient to establish reasonable suspicion. Fields argues that the caller reported "general criminality," not an "ongoing emergency," and that under the Supreme Court's decision in *Florida v. J.L.*, calls regarding general criminality are insufficient to establish reasonable suspicion. 529 U.S. 266 (2000). *J.L.* invalidated an investigatory stop based on an anonymous tip asserting only that a lone black male lawfully at a bus stop was carrying a gun, without reference to any ongoing emergency. But we have consistently distinguished tips like the one in *J.L.* asserting general criminality from calls like the one in this case that provide specific information regarding an ongoing emergency and reasoned that the latter justify an immediate police response. *See United States v. Wooden*, 551 F.3d 647 (7th Cir. 2008); *Hicks*, 531 F.3d at 558-59.

We have also held that "police observation of an individual, fitting a police dispatch description of a person involved in a disturbance, near in time and geographic location to the disturbance," is sufficient to establish reasonable suspicion to investigate the disturbance. *United States v. Lenoir*, 318 F.3d 725, 729 (7th Cir. 2003). That is precisely what occurred here: a frightened eyewitness was watching a crowd of men gather at night around two vehicles in an alley outside her home as one of them displayed a large firearm. Her report of these details, and her fear of the events that were potentially developing outside of her home, alerted the police to the possibility of a violent disturbance. And when the police approached the alley, the scene they encountered was consistent with what the caller had described: one car was departing the scene and a second vehicle, illegally parked and matching the caller's description, remained.

We have found similar calls reporting an unfolding disturbance that included a weapon, followed by police corroboration of some of the call's details, sufficient to justify a brief investigatory stop because brandished guns create a risk of violence. In *Drake*, we held that police conducted a lawful stop after an identified woman reported a contemporaneous disturbance among a group of people in two separate cars with weapons. 456 F.3d at 772-73. And in *Wooden*, we upheld an investigatory stop based on an anonymous 911 caller who reported a domestic dispute between two people, provided the location, and added that he saw one of the parties with a gun. 551 F.3d at 648. While a call reporting a "suspicious person" alone would be insufficient to justify a *Terry* stop, *see e.g. Gentry v. Sevier*, 597 F.3d 838, 845 (7th Cir. 2010), the call in this case provided more. The details about a group of males gathered at night in an alley with a displayed gun, coupled with the caller's expression of fear and the officers' own first-hand observations, were sufficient to establish reasonable suspicion to justify the brief *Terry* stop. The judgment of the district court is AFFIRMED.